IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANINE F.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 C 5125 |
| v. | ) |
| | ) Magistrate Judge |
| KILOLO KIJAKAZI, Acting | ) Maria Valdez |
| Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Janine F.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 17] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 23] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Kilolo Kijakazi has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### I. PROCEDURAL HISTORY

On November 17, 2005, Plaintiff filed a claim for DIB, alleging disability since June 17, 2005. Plaintiff's claim was denied throughout the administrative stages, after which she appealed to this Court. The Court remanded the matter for further proceedings on February 8, 2012. Another administrative hearing was held, after which another unfavorable decision was issued. Plaintiff again appealed her claim to this Court, and the Court again remanded the case for further proceedings on May 27, 2016. Following the second remand, another hearing before an Administrative Law Judge ("ALJ") was held on February 23, 2017. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On March 13, 2017, the ALJ again denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's March 13, 2017 decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

In the ALJ's March 13, 2017 decision, Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that

Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of June 17, 2005 through her date last insured of September 30, 2008. At step two, the ALJ concluded that, through the date last insured, Plaintiff had the following severe impairments: history of cellulitis; lower extremity edema; thoracic kyphosis; herniated and bulging discus of the thoracic and lumbar spine; and obesity. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; and no concentrated exposure to extreme heat. At step four, the ALJ concluded that Plaintiff would be unable to perform her past relevant work as a CNA. However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that, through the date last insured, Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she was not disabled under the Social Security Act.

## DISCUSSION

### I.     ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

3

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.     JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to

5

a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ did not properly weigh the medical opinions; (2) the ALJ did not properly evaluate Plaintiff's subjective statements; and (3) the ALJ's RFC determination is not based on substantial evidence. Each argument will be addressed below in turn.

A. **The ALJ's Evaluation of the Medical Opinions**

In advancing her first argument, Plaintiff contends that the ALJ erred in discounting the opinions of her "treating sources and a retrospective consultative opinion from a specialist . . . without providing a proper rationale for why the treating source and specialist opinions were not supported by the record." (Pl.'s Br. at 1.) According to Plaintiff, "the ALJ failed to identify a proper evidentiary basis for rejecting those opinions." (*Id.* at 8.) The first part of Plaintiff's argument is directed to the ALJ's consideration of the opinions of Dr. Elizabeth Ritz, her treating primary care physician, and Dr. Fazal Khan, who has treated Plaintiff for back pain.

Under the "treating physician rule,"[3] an ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *see also Adrian Z. v. Berryhill*, No. 17-cv-4585, 2019 U.S. Dist. LEXIS 129383, at *4 (N.D. Ill. Aug. 2, 2019) ("When an ALJ declines to give controlling weight to a treating

---

[3] The Social Security Administration has modified the treating-physician rule to eliminate the "controlling weight" instruction. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from your medical sources."). However, the new regulations apply only to disability applications filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply."). Plaintiff's application in this case was filed in 2005, and, therefore, the ALJ was required to apply the former treating physician rule.

7

physician's opinion, he must provide a sound explanation for the rejection.") (citation omitted). Even if a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308.

In her decision, the ALJ acknowledged the opinions of Dr. Ritz, including her opinions that Plaintiff "was limited to sitting for 15-20 minutes and standing for 10-15 minutes" and that Plaintiff would need "frequent rest breaks due to pain." (R. 684-85.) In discounting Dr. Ritz's opinions, the ALJ reasoned as follows:

> I do not assign Dr. Ritz' opinions controlling or even great weight. I appreciate that Dr. Ritz is a treating doctor. However, she only specializes in internal medicine. Moreover, her opinions are based on the claimant's subjective complaints. Indeed, while Dr. Ritz stated that she had been treating the claimant for two years for back and right sciatic nerve pain, the first mention of back pain in Dr. Ritz's records is in July 2006, which was accompanied by the claimant's report that she was filing for disability. The claimant only complained to Dr. Ritz a few times about her alleged pain during the period at issue, and those complaints involved discussions of her disability claim. I note that during the September 2006 office visit on the date one of the letters was written, the claimant attributed the increased severity of her pain due to packing, painting, and performing other physical activities associated with moving, and not due to a chronic condition. More significant is Dr. Ritz's notation of the claimant's request that Dr. Ritz document the claimant's allegations in a letter, including the need to stop all activity several times throughout the day because the pain is so bad. Review of the letter confirms that Dr. Ritz did in fact include this information. I also find it probative that despite Dr. Ritz's advisement of pain of such severity that it precludes work activity and impacts daily tasks, Dr. Ritz declined to prescribe any narcotic or prescription pain medication, opting instead to encourage the claimant to continue taking ibuprofen. I also find that Dr. Ritz's own treatment notes, including on the dates she wrote these letters, do not reflect physical findings to support her opinions. These factors all amply support the conclusion that Dr. Ritz's statements were based solely on the claimant's subjective complaints, and not supported by any medically acceptable clinical or diagnostic findings. I note that while Dr. Ritz again advised in October 2008 of the

8

> claimant's ability to work, she also expressly acknowledged that such an assessment was based on the claimant's subjective reports. Regarding Dr. Ritz's January 2009 opinion, I appreciate that this opinion was based in part on MRI findings. However, I am more persuaded by the examination findings, which consistently document normal neurological functioning. I note that just a few months after the MRI, Dr. Schlagheck noted that the claimant had trigger point[s] in her back, but full range of motion of her lumbar spine, normal gait, and good strength. Accordingly, given these factors, I assign Dr. Ritz's opinions minimal weight.

(*Id.* at 685 (citations omitted).)

The ALJ also considered the opinions of Dr. Khan. The ALJ noted that Dr. Khan had been seeing Plaintiff since 2011 for back pain and that he opined that Plaintiff could sit for five minutes, stand for five minutes, and walk zero blocks without rest or severe pain. (*Id.* at 686.) The ALJ further detailed Dr. Khan's opinions, including his opinions that Plaintiff required an at will sit/stand option, multiple breaks, and needed a cane or assistive device. The ALJ noted Dr. Khan's statement "that these limitations had been present since 2005, and . . . the claimant could not perform any job due to her need to change positions and side-effects of medication." (*Id.*) The ALJ then assessed Dr. Khan's opinions as follows:

> I do not assign Dr. Khan's opinion controlling or even great weight. Dr. Khan did not treat or examine the claimant during the critical period at issue. Moreover, it does not appear that he is a specialist, as he works in a family health center. His opinion is grossly inconsistent with the objective medical findings from the period at issue. In addition, there is no allegations of side-effects from medications related to her back during the critical period at issue. I note that Dr. Khan found the claimant could never bend/stoop, yet at the consultative examination, she was in fact able to bend over; other examinations document her full lumbar range of motion. For these reasons, I do not assign Dr. Khan's opinion any significant weight.

(*Id.*)

9

The Court finds that the ALJ provided the requisite sound explanations for discounting the opinions of Dr. Ritz and Dr. Khan. In sum, the ALJ discounted Dr. Ritz's opinions because they were not within her specialty, were based on Plaintiff's subjective reports, and were not supported by treatment notes. The ALJ discounted Dr. Khan's opinions because he did not treat Plaintiff during the relevant timeframe and his opinions were not within his specialty and inconsistent with examination findings. Given this explicit and detailed reasoning, the Court concludes that substantial evidence supports the ALJ's decision not to give Dr. Ritz's and Dr. Khan's opinions controlling weight. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) ("An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician, . . . or when the treating physician's opinion is internally inconsistent, . . . as long as he 'minimally articulate[s] his reasons for crediting or rejecting evidence of disability.'") (citations omitted); *Gale L-S v. Kijakazi*, No. 21 C 6874, 2023 WL 2746003, at *4 (N.D. Ill. Mar. 31, 2023) ("An ALJ may discount a treating physician's opinions based on the claimant's subjective complaints.") (citations omitted).

With respect to the ALJ's assessment of Dr. Ritz's opinions, Plaintiff argues that the ALJ was "playing doctor" and relied on her "own unqualified lay opinion." (Pl.'s Br. at 9.) The Court rejects that argument. The ALJ was not erroneously "playing doctor" by considering and weighing the evidence in relation to the various medical opinions. *See Armstrong v. Barnhart*, 287 F. Supp. 2d 881, 886-87 (N.D. Ill.

10

2003) ("Our review of the record indicates that the ALJ was not 'playing doctor,' but performing his duty to consider and weigh the evidence."). Indeed, "comparing and weighing the different [medical] opinions differently based on whether they were supported by the medical record as a whole . . . is exactly what the ALJ is supposed to do." *Roy R. v. Kijakazi*, No. 10 CV 1687, 2022 WL 1185601, at *13 (N.D. Ill. Apr. 21, 2022) (citations omitted). That is what the ALJ did here.

Plaintiff also takes issue with the ALJ's evaluation of the opinions of Roger Miller, her treating chiropractor. In her decision, the ALJ noted the "statement dated December 29, 2005 [in which] Mr. Miller opined that it would be 'very difficult' for the claimant to 'do any occupation' due to her spinal conditions and acute exacerbations.'" (R. 685.) In rejecting Mr. Miller's opinion in that regard, the ALJ reasoned that he was "not an acceptable medical source" and "he acknowledged that he was without knowledge of the claimant's current status" at the time he rendered the opinion. (*Id.*) The ALJ further reasoned that Mr. Miller "did not examine the claimant during the period at issue" and "[e]ven his treatment notes prior to the period at issue do not support his assessments." (*Id.*) The ALJ also reasoned that there was "no evidence that chiropractor Miller possesses the vocational expertise to conclude that the claimant does not have the ability to perform any occupation." (*Id.*) The ALJ also considered Mr. Miller's subsequent opinion that Plaintiff would "continue to have acute onsets of low back pain/sciatica due to possible lumbar disc herniation" and Plaintiff was "very restricted in her employment future." (*Id.* at 686.) The ALJ similarly discounted that opinion

11

because Mr. Miller was not an acceptable medical source and "[h]is opinion is beyond his expertise [and] it is not supported by examination findings by actual doctors as well as the consistent normal neurological findings." (*Id.*) The Court finds no error in the ALJ's treatment of Mr. Miller's opinions. The ALJ reasonably rejected the opinions, in sum, because Mr. Miller concededly was not an acceptable medical source and his opinions were not based on contemporaneous treatment, were not supported by treatment notes, and were inconsistent with other examination findings.

Lastly, Plaintiff challenges the ALJ's evaluation of a statement provided by Dr. George DePhillips, a non-treating consultant. The ALJ assessed Dr. DePhillips' statement as follows:

> The claimant's representative submitted a signed statement from neurologist, Dr. George DePhillips dated December 18, 2012 indicating that MRI studies were consistent with the claimant's subjective pain complaints and that in all probability the claimant would have experienced such symptomatology since at least June 2005. However, the issue is not whether the condition exists, but instead whether the claimant's condition is disabling. Here, I find that it is not. While the claimant has a long history of back pain, even before the alleged disability onset date, the claimant is not automatically disabled due to the findings of herniated disc. The overall record shows there has been minimal treatment and minimal examination findings during the period at issue.

(R. 686 (citations omitted).) Again, the Court finds no error in the ALJ's assessment of Dr. DePhillips' statement. The ALJ reasonably rejected Dr. DePhillps' vague conclusion offered many years after the period in question because it was inconsistent with the treatment and examination findings that occurred during the

12

relevant timeframe. Accordingly, overall, the Court finds Plaintiff's challenges to the ALJ's assessment of the medical opinion evidence unavailing.

### B. The ALJ's Subjective Symptom Assessment

For her second argument, Plaintiff contends that the ALJ erred in evaluating her subjective symptoms. In particular, Plaintiff asserts that the ALJ "over-relied on Plaintiff's daily activities without consideration for Plaintiff's difficulty in performing those activities." (Pl.'s Br. at 1.) In her decision, the ALJ detailed Plaintiff's allegations that "her ability to work is limited due to cellulitis in her right leg; shifting disc in her back; and sciatica." (R. 678.) The ALJ noted Plaintiff's allegation "that her pain starts from her lower back and radiates down her right leg." (*Id.* at 678-79.) The ALJ further noted Plaintiff's reports that "her back pain has increased and makes it difficult for her to take care of her personal needs" and her testimony that "her back pain is constant" and "she is unable to sit or stand for longer than 15 minutes continuously; unable to lift more than ten pounds; and unable to bend at the waist." (*Id.* 679.) However, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 681.)

In support of her determination that Plaintiff's complaints were not fully corroborated, the ALJ explained that "the medical records do not support the severity of the claimant's alleged symptoms to the extent alleged," including because exam findings showed "[m]otor strength [of] 5/5 throughout" and "[s]he was

13

able to walk on her toes and heels, and tandem walk, squat, and stand on one leg." (*Id.*) Along those lines, the ALJ noted that "physical examinations have essentially been within normal limits." (*Id.* at 683.) The ALJ further explained that "the record reflects that on numerous occasions the claimant failed to even mention complaints of back pain, especially to her treating physician Dr. Ritz." (*Id.* at 682.) Additionally, the ALJ reasoned that the medical "findings simply do not support the claimant's allegations of 10/10 level pain, difficulty getting dressed, laying down most of the day, an inability to bend over, and daily use of a cane and/or walker." (*Id.* at 683.)

This Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations and citation omitted). "[P]atently wrong . . . means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted). Under that standard, the Court finds that, per the ALJ's explanation and support outlined above, the ALJ reasonably determined that Plaintiff's allegations were not fully corroborated. *See Prill v. Kijakazi*, No. 21-1381, 2022 U.S. App. LEXIS 1072, at *23 (7th Cir. Jan. 13, 2022) ("Substantial evidence supports the ALJ's determination that Prill's account of her subjective symptoms was not consistent with her medical records."); *Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) ("Because the ALJ's weighing of [claimant's] reported symptoms in the context of the whole record is supported by substantial evidence, we find no reversible error on this front either."); *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) ("[T]he ALJ's credibility determination

14

was not 'patently wrong,' because she found [claimant] not credible for several reasons that were adequately supported by the record.") (citation omitted); *cf. Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020) ("The ALJ's rationale here was thin, but it was adequate to reflect her conclusion that the objective medical evidence and Lacher's daily activities did not corroborate his subjective symptoms."). Indeed, Plaintiff herself concedes that the ALJ provided multiple reasons for discounting her subjective statements, including "because she was able to perform some activities of daily living, the record did not contain objective finds that the ALJ would have expected to find in the record, and because Plaintiff's treatment did not occur with the frequency and in the manner the ALJ would have expected." (Pl.'s Br. at 12.)

Concerning Plaintiff's specific challenge concerning her activities, the ALJ provided the following analysis:

> The record shows the claimant engaging in exertional activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. For example, the medical evidence of record further shows that on September 6, 2006, the claimant reported "terrible back pain," worsened by packing and painting in preparation for a move. She stated that she simply took Ibuprofen three or four times a day with some relief, and that she also needed frequent rest breaks to cope with the pain. Dr. Ritz noted that the claimant had "again" hurt her lower back while moving to a new house. In May 2008, the claimant reported that she might have been bitten while mowing the lawn.

(R. 681 (citations omitted).)

Plaintiff argues that an ALJ is required to "consider difficulties in how [] activities are performed or modified." (Pl.'s Br. at 12.) Plaintiff's contention in that regard is somewhat puzzling, given that the ALJ did explicitly recognize that

15

moving and painting allegedly exacerbated her pain. Plaintiff herself acknowledges that "[t]he ALJ stated that [Plaintiff] suffered pain in preparing to move to a new home, and again suffered pain after the move." (*Id.*) Plaintiff also contends that "the ALJ failed to account for Plaintiff's testimony that she needed to frequently shift positions and take rest breaks while performing activities." (*Id.*) Again, that assertion is rebutted by the fact that the ALJ recognized that Plaintiff allegedly needed breaks to cope with the pain. In any event, the Court concludes that it was reasonable for the ALJ to determine that Plaintiff engaging in taxing activities such as packing and mowing the lawn tended to contradict Plaintiff's allegations of disabling pain. Defendant is correct that "[t]he ALJ did not impermissibly equate these activities with an ability to work full time – instead, she cited these activities as evidence undercutting Plaintiff's allegations of disabling symptoms." (Def.'s Memo. at 8.)

Plaintiff also argues that the ALJ erroneously "discounted Plaintiff's allegations because she did not frequently go to the doctor during the relevant time period" given Plaintiff's explanation "that she could not always afford consistent medical treatment." (Pl.'s Br. at 13.) In her decision, the ALJ "appreciate[d] that [Plaintiff] has limited funds for medical care" but noted that the record revealed "infrequent trips to the chiropractor and relatively rare treatment for the allegedly disabling symptoms." (R. 682-83.) The Court agrees with Defendant that "[a]lthough Plaintiff purportedly had 'limited funds for medical care,' the ALJ was nonetheless justified in concluding that this fact alone did not sufficiently explain away the

16

dearth of treatment." (Def.'s Memo. at 6.) And, ultimately, Plaintiff has not shown that the ALJ's evaluation of her subjective symptoms was "patently wrong," as was Plaintiff's burden. *See Horr v. Berryhill*, 743 F. App'x 16, 19–20 (7th Cir. 2018).

### C. The ALJ's RFC Determination

For her final arguments, Plaintiff contends that "the ALJ failed to account for Plaintiff's need for additional rest periods while performing activity" and "further erred in failing to incorporate a proper sit/stand opinion in the RFC determination." (Pl.'s Br. at 14-15.) As an initial matter, as discussed above, the ALJ did in fact consider Plaintiff's allegation that she needed frequent rest breaks to cope with pain while engaging in activities. Additionally, Plaintiff concedes that "[t]he ALJ alternately found that Plaintiff would be able to sustain work with a sit/stand opinion." (*Id*. at 15.) In any event, as Defendant point out, "[n]either the two state-agency medical consultants nor the consultative examiner Dr. Budzesnki believed that Plaintiff required 'additional rest periods' or a 'sit/stand' option." (Def.'s Memo. at 14.) The Court ultimately agrees with Defendant that "Plaintiff's proposed limitations seem to find their only support in Plaintiff's own claims, which the ALJ reasonably discredited, and the opinion of Dr. Khan – rendered long after her date last insured – which the ALJ reasonably gave limited weight." (*Id*.) Accordingly, the Court finds Plaintiff's final arguments unavailing.

17

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion for summary judgment [Doc. No. 17] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 23] is granted.

**SO ORDERED.**     **ENTERED:**

**DATE:     June 6, 2023**     _____
     **HON. MARIA VALDEZ**
     **United States Magistrate Judge**